**UNITED STATES of America.**
**Plaintiff,**

**v.**

**Mary KNOWLES, Defendant.**
**No. 1211–56.**

United States District Court
District of Columbia.
Jan. 2, 1957.

George H. Goodrich, Washington, D. C., and Henry W. Sawyer, III, Philadelphia, Pa., for the motion.

Oliver Gasch, U. S. Atty. and William Hitz, Asst. U. S. Atty., Washington, D. C., opposed.

HOLTZOFF, District Judge.

The defendant, Mary Knowles, is under indictment on a charge of contempt of Congress. The specific accusation is that she unlawfully refused to answer certain pertinent questions when testifying as a witness before a Subcommittee created by the Committee on the Judiciary of the United States Senate, to investigate the administration of the Internal Security Act, 50 U.S.C.A. § 781 et seq. and other internal security laws. The questions in issue related to alleged contacts and connections between the witness and the Communist party and Communist-front organizations.

The matter is now before the Court on the defendant's motion to dismiss the indictment on the ground that fourteen of the twenty-three members of the grand jury that returned the indictment were employees either of the government of the United States or of the government of the District of Columbia and, therefore, are claimed to have been biased and prejudiced against the defendant, and by reason of alleged fear are said to have been unable to exercise independent judgment. In the alternative, the defendant requests a preliminary hearing at which evidence may be adduced in support of the motion. It is urged in behalf of the defendant that all Government employees are subject to investigation under Executive Order No. 10450, 5 U.S.C.A. § 631 note, relating to national security, and the defendant's counsel speculate that a grand juror who is a Government employee may fear that he may possibly be subjected to investigation under this Executive Order if he voted against returning an indictment.

The qualifications of grand jurors are fixed by law.[1] They relate to such matters as citizenship, residence, age, health, character, and ability to read, write, speak and understand the English language. The accused may attack the legal qualifications of a grand juror, either by challenging an individual juror on the ground that the jury is not *legally* qualified, or by motion to dismiss the indictment because of a lack of legal qualifications of an individual juror.[2]

Challenges for bias, or for any cause other than lack of legal qualifications, are unknown as concerns grand jurors. No provision is made for peremptory challenges of grand jurors and no such challenges are permitted. Likewise no *voir dire* examination exists in respect to grand jurors. In other words, the status of a member of a grand jury may

1. 28 U.S.C.A. § 1861; D.C.Code 1951, § 11–1417.

2. Federal Rules of Criminal Procedure, Rule 6(b). 18 U.S.C.A.

not be questioned except for lack of legal qualifications.

▮ The basic theory of the functions of a grand jury, does not require that grand jurors should be impartial and unbiased. In this respect, their position is entirely different from that of petit jurors. The Sixth Amendment to the Constitution of the United States expressly provides that the trial jury in a criminal case must be "impartial". No such requirement in respect to grand juries is found in the Fifth Amendment, which contains the guaranty against prosecutions for infamous crimes unless on a presentment or indictment of a grand jury. It is hardly necessary to be reminded that each of these Amendments was adopted at the same time as a part of the group consisting of the first ten Amendments. A grand jury does not pass on the guilt or innocence of the defendant, but merely determines whether he should be brought to trial. It is purely an accusatory body. This view can be demonstrated by the fact that a grand jury may undertake an investigation on its own initiative, or at the behest of one of its members.[3] In such event, the grand juror who instigated the proceeding that may result in an indictment, obviously can hardly be deemed to be impartial, but he is not disqualified for that reason.

These conclusions are fully supported by the weight of authority.

▮ Judge Learned Hand has observed that grand juries "are the voice of the community accusing its members, and the only protection from such accusation is in the conscience of that tribunal", In re Kittle, C.C., 180 F. 946, 947.

Judge Fee in United States v. Smyth, D.C., 104 F.Supp. 283, 301, made the following observations on this point:

"The grand juror is not to be subjected to inquisition into his motives. He is not to be subjected to examination into what he did while serving on the grand jury. The court should not make such inquiries and has the power to punish as a contempt any such attempt by anyone, whether the grand jury be discharged or not.

"The grand jurors have never been subject to question, criminal prosecution or civil liability for any motive which impelled indictment. Even if one or more were actuated by active malice, this would constitute ground neither for liability nor for quashing the indictment."

It was said in United States v. Belvin, C.C., 46 F. 381, 384, that:

"Grand jurors are not sworn on their *voir dire* to say whether they have formed or expressed an opinion of the guilt or innocence of a person charged with crime. On the contrary, the court charges each of them to bring to the attention of the grand jury all offenses of which he may have any personal knowledge. The grand jury does not try; it merely accuses with a view to trial."

State courts have expressed similar views. In Coblentz v. State, 164 Md. 558, 570, 166 A. 45, 50, 88 A.L.R. 886, the court in referring to grand jurors, made the following statement:

" * * * we find no ground for imposing a requirement that they must be unprejudiced as the objection demands. On the contrary, such a requirement would seem inconsistent with their freedom to accuse upon their own knowledge, for persons who come with knowledge sufficient to serve as a basis of indictment are likely to come with the conclusion and prejudice to which that knowledge leads. They must act upon their own convictions, after conferring secretly and without any interference; but they are not required to come without any prejudice."

3. Hale v. Henkel, 201 U.S. 43, 65, 26 S.Ct. 370, 50 L.Ed. 652.

So, too, in Commonwealth v. Woodward, 157 Mass. 516, 518, 32 N.E. 939, 940, the Court remarked:

"It is always considered that, in finding indictments, grand jurors may act upon their own knowledge, or upon the knowledge of one or more of their number. It is accordingly held in most jurisdictions that it is no objection to the validity of an indictment that one or more of the grand jurors, who were otherwise qualified, had formed or expressed an opinion of the guilt of the accused."

The same opinion was advanced in Sheppard v. State, 243 Ala. 498, 500, 10 So.2d 822, 823:

"The general and widely prevailing rule is that, in the absence of statute, bias or prejudice on the part of a grand juror furnishes no ground of attack on the indictment."

In People v. Looney, 314 Ill. 150, 155, 145 N.E. 365, 367, the Court said:

"A grand jury is an accusatory body. It does not try persons charged with crime. It only investigates, and, if sufficient criminating evidence is presented makes accusation, which is an indictment. So it is not a ground of challenge of a grand juror that he has formed and expressed an opinion as to the guilt of a prisoner."

 Government employees are qualified to serve on both grand juries and petit juries.[4] The fact that criminal prosecutions are brought in the name of the United States is not regarded as creating an implied bias on the part of employees of the United States against the accused. The contention that a grand juror might be afraid that a vote against returning an indictment on a charge of contempt of Congress, might jeopardize his future, borders on the fantastic. By the same token, the intimation that the Government may exert reprisals against a grand juror who voted against an indictment is equally unworthy and untenable. These bare, far-fetched assertions are not supported by any fact whatsoever. They obviously do not warrant the institution of an investigation.[5]

The pungent observations made by Mr. Justice Minton in Dennis v. United States, 339 U.S. 162, 172, 70 S.Ct. 519, 523, 94 L.Ed. 734, are exceedingly pertinent to this discussion:

"Vague conjecture does not convince that Government employees are so intimidated that they cringe before their Government in fear of investigation and loss of employment if they do their duty as jurors, which duty this same Government has imposed upon them."

There is another circumstance to be considered. To investigate a grand juror who happens to be a Government employee in order to determine whether he might have had a dread of adverse consequences if he voted to ignore the charge, may, in itself, be a form of intimidation against voting in favor of an indictment in any similar case in the future. In other words, in seeking to prevent the exercise of pressure, the defendant, unwittingly perhaps, would exert a subtle form of influence in reverse to discourage the return of an indictment. Jurors must be free from any such harassment and annoyance. No juror should be placed in a position of having to fear that a vote cast by him might subject him to an investigation. Any other-

4. United States v. Wood, 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78; Frazier v. United States, 335 U.S. 497, 504 et seq., 69 S.Ct. 201, 93 L.Ed. 187; Great Atlantic & Pacific Tea Co. v. District of Columbia, 67 App.D.C. 30, 32, 89 F.2d 502; Higgins v. United States, 81 U.S.App.D.C. 371, 160 F.2d 222; Romney v. United States, 83 U.S.App.D.C. 150, 156–157, 167 F.2d 521; Smith v. United States, 86 U.S.App.D.C. 195, 180 F.2d 775.

5. Emspak v. United States, 91 U.S.App. D.C. 378, 203 F.2d 54, 56.

course would defeat the fundamental philosophy of the jury system.

The motion to dismiss the indictment, or in the alternative for a preliminary hearing at which proof may be offered, is denied.