[No. 14155-8-II. Division Two. January 8, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. LYLE I. ESTABROOK, *Appellant*.

310

*Herbert D. Austad,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* and *Pamela B. Loginsky, Deputy,* for respondent.

SEINFELD, A.C.J. — Lyle Estabrook was convicted of two counts of indecent liberties. He represented himself at trial, but retained counsel after his conviction to represent him at sentencing and on several posttrial motions. He now appeals his conviction, making 21 assignments of error. We affirm.

J.H., the victim in this case, is mildly developmentally disabled, with a mental age about 4 years lower than her chronological age. At the time of the crime she was 11, with a mental age of approximately 7; at trial she was 15, with a mental age of approximately 11. In March of 1980, James Hart and Debbie (Stark) Hart adopted J.H. when she was 5 years old. The Harts were divorced in 1983 and James Hart gained custody of J.H. Later that year he married Sonya (Goetz) Hart. Lyle Estabrook, at the time of the crime and during trial, was Debbie's boyfriend.

On Friday afternoon, September 12, 1986, Debbie Stark picked up J.H. from Hart's house for a weekend visit. That

night, after J.H. was asleep in bed, Estabrook entered her room, removed her covers and clothes, and inserted his fingers in her vagina.

The next day, Saturday, September 13, Estabrook visited Stark's house and offered to take J.H. for a ride to the store; instead, Estabrook took J.H. to his house. He took her into his bathroom, removed her clothes, and forced her to put her hand on his penis until he ejaculated. When J.H. tried to escape, Estabrook punched her and took her back to the bathroom. He laid her on the floor, again took off her clothes when she refused to do so herself, and inserted his penis into her vagina.

After this incident, Estabrook returned J.H. to Debbie Stark's house, and Debbie returned J.H. to James Hart on Sunday evening, September 14, 1986. J.H. did not immediately tell the Harts what had happened.

On Tuesday, September 16, 1986, J.H. told James Hart that "Lyle" had touched her private area. The Harts reported the incident to the police. J.H. eventually told several other people what had happened. At this point, the only allegation J.H. had made was that Estabrook had inserted his fingers into her vagina.

J.H.'s revelation touched off a lengthy and contentious dispute concerning rights of visitation. As a result of the incident and of the feuding between her parents, J.H.'s emotional state deteriorated. Initially nervous and tense, she not only began acting out but also became withdrawn. She was unable to sleep at night and had difficulty staying awake during the day. During the 3-year interim between the incidents and trial she was twice confined to a mental hospital for a period of 6 months each time. At the time of trial, she was still angry and frustrated and testified to being afraid of Estabrook and Stark.

Estabrook was charged by information with one count of indecent liberties on December 2, 1986; the court scheduled trial for March 16, 1987, the 84th day after arraignment. Estabrook was then represented by counsel. On March 16,

1987, the State advised the trial court that it had concerns about witness tampering, and moved to dismiss without prejudice to allow further investigation. The trial court granted the motion.

In September of 1989, J.H. told Sonya Hart about the Saturday incidents in Estabrook's bathroom that had occurred 3 years earlier. She later told this story to others as well.

The State refiled the information on April 5, 1990, this time alleging two counts of indecent liberties. The trial court rearraigned Estabrook on May 2, 1990, and set the matter for trial on May 7, 1990. Estabrook formally waived counsel at his arraignment, choosing to proceed pro se. On May 4, 1990, the State filed a bill of particulars specifying the dates and circumstances of the crimes. On May 7, the court called the case and heard pretrial motions. Estabrook moved to dismiss the case based on the prior dismissal without prejudice. The court denied the motion and a jury was selected and sworn on May 8, 1990.

The jury convicted Estabrook on both counts of indecent liberties on May 14, 1990. Estabrook then obtained counsel, who appeared June 26, 1990. Estabrook then moved for arrest of judgment or a new trial and for release on bail; the court denied his motions and imposed an exceptional sentence.[1]

## I
### SPEEDY TRIAL RIGHTS

Estabrook first contends that his procedural speedy trial rights under CrR 3.3 were violated. However, the State met the requirements of the rule.

Arraignment triggers the speedy trial clock under CrR 3.3. Estabrook was neither detained nor subject to conditions of release, so the State had 90 days to bring him to trial after

---

[1]Estabrook also claims error as to his exceptional sentence. This court heard an accelerated review of his sentence after the briefs in this appeal were filed, deciding his sentencing claims in an unpublished opinion noted at 63 Wn. App. 1005 (1991).

his arraignment on the 1986 charge. CrR 3.3(c)(1). The dismissal without prejudice ordered on the 84th day stopped the speedy trial clock. CrR 3.3(g)(4). The time between dismissal of a charge and the defendant's rearraignment following refiling of the same charge is excluded from the time period allowed for trial. CrR 3.3(g)(4). The State thus had 6 days from rearraignment to try Estabrook. The refiling in 1990 contained one new charge, but it arose out of the same occurrence and had the same elements of proof as the original charge. Thus the time period for speedy trial of that charge was the same as for the original charge. CrR 3.3(c)(5).

Rearraignment occurred on May 2, 1990. We assume, but do not decide in this case, that the day of rearraignment is counted in the 90-day period. Counting that day, it was necessary for the trial court to commence trial by May 7, 1990, the 90th day, to comply with the speedy trial rule. In fact, the court did call Estabrook's case to trial on May 7, and spent the first day hearing preliminary motions. Jury voir dire began on May 8, although a jury panel was available on May 7.

Although neither statute nor court rule specifies the triggering events that constitute the commencement of a trial for purposes of compliance with CrR 3.3, decisions from Divisions One and Three of this court suggest that trial commences when a necessary part of the trial begins. *State v. Redd*, 51 Wn. App. 597, 608, 754 P.2d 1041 (Division One) (trial commenced when the court called the case and considered preliminary motions), *review denied*, 111 Wn.2d 1007 (1988); *State v. Becerra*, 66 Wn. App. 202, 207, 831 P.2d 781 (1992) (Division Three) (CrR 3.3 satisfied when jurors were selected within speedy trial limits although they were not sworn and the court did not hear pretrial motions until after the statutory time period). Here, the scheduled trial date of May 7, the day the court in fact called the case for trial, was not a date merely scheduled for hearing preliminary motions. The trial commenced that day and proceeded, without interruption, to jury selection and presentation of the State's case

in chief. Under these facts, Estabrook's case was called for trial within the 90-day period of CrR 3.3.

Estabrook also claims that his constitutional right to a speedy trial under the sixth amendment to the United States Constitution was violated by the long delay between the dismissal of charges in 1987 and their subsequent refiling in 1990. However, the Sixth Amendment speedy trial clause does not apply after the State, acting in good faith, dismisses the case of a defendant who is not subject to any restraint on his liberty. *United States v. MacDonald*, 456 U.S. 1, 6-9, 71 L. Ed. 2d 696, 102 S. Ct. 1497 (1982); *see United States v. Loud Hawk*, 474 U.S. 302, 310-12, 88 L. Ed. 2d 640, 106 S. Ct. 648 (1986). Any delay after dismissal, like any delay before charging, raises only a due process issue, not a speedy trial issue. *MacDonald*, 456 U.S. at 7. Estabrook does not claim or argue a violation of due process.

Estabrook also asserts, without supporting argument, a violation of his speedy trial rights under Const. art. 1, § 22 (amend. 10). We will not consider a state constitutional issue where the proponent fails to present analysis of the factors set forth in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). *See State v. Reding*, 119 Wn.2d 685, 696, 835 P.2d 1019 (1992).

## II
### RIGHT TO SELF-REPRESENTATION

Estabrook next appears to claim that the procedure imposed by the trial court during the cross examination of J.H. violated his constitutional rights of self-representation under both the sixth amendment to the United States Constitution and Const. art. 1, § 22 (amend. 10). Rather than allow Estabrook to personally examine J.H. at J.H.'s competency hearing or at trial, the trial court directed Estabrook to submit his cross examination questions in writing to the court. The judge then asked those questions after advising the jury that:

> At this time, as I have told you, Mr. Estabrook has the right of cross-examination. But because of the fact that he is not

represented by an attorney, I am going to be asking the questions that he has asked me to ask . . . .. They are Mr. Estabrook's questions.

During trial, the court gave Estabrook additional time after J.H.'s direct testimony to prepare his questions. In addition, the trial court allowed "Mr. Estabrook to ask all the questions he needs to ask", and refused to sustain any scope objections to Estabrook's proposed questions.[2]

█ It appears from the record before us that the trial court imposed this procedure sometime before the commencement of the trial, but we have not been provided with a record of this ruling. Consequently, we are unable to determine if Estabrook objected to this method of cross examination and are unable to review the trial court's stated reasons for adopting this awkward procedure. Estabrook, the party seeking review, bears the burden of perfecting the record so that we have before us those portions of the report of proceedings necessary to review the issues presented. *State v. Garcia*, 45 Wn. App. 132, 140, 724 P.2d 412 (1986); *see* RAP 9.2(b).

However, we believe that this is a significant issue warranting review and, further, that we can discern the trial court's general rationale from the facts and circumstances that are in the record. Thus, we have decided to proceed, using the undisputed trial court rationale as set forth in the State's brief. *See* RAP 1.2(a), (c); *Millikan v. Board of Directors*, 92 Wn.2d 213, 215, 595 P.2d 533 (1979); *Smith v. Dalton*, 58 Wn. App. 876, 880, 795 P.2d 706 (1990); *Yakima v. Yakima Police & Fire Civil Serv. Comm'n*, 29 Wn. App. 756, 758-59, 631 P.2d 400, *review denied*, 96 Wn.2d 1013 (1981).

We do know that the trial court had before it, prior to J.H.'s trial testimony, documents submitted by Estabrook indicating that J.H. had been abused by her natural parents

---

[2]Estabrook also appears to contend that this procedure prevented cross examination of J.H. regarding certain hearsay statements in her testimony because he could not ask followup questions. However, when the trial court gave Estabrook the opportunity to ask further questions, he failed to submit any.

before being adopted by the Harts and had been abused by other children, that she had behavioral problems and had set fires at her home, and that in general, she was a fragile and disturbed child. She had seen a series of counselors and been confined for a year in mental institutions for treatment of severe behavioral problems after the 1986 abuse. Finally, J.H. is developmentally disabled and testified to her fear of Estabrook.

In the State's brief, the State describes what it contends was the trial court's rationale for the cross examination procedure it utilized. The State suggests that the court was attempting to balance conflicting interests:

> Estabrook's right to the dignity of self representation and the reasonable concern for a vulnerable and scared developmentally delayed child witness. It [the trial court] considered the prejudice to Estabrook if the jury should perceive him as bullying [J.H.], and the fact that if [J.H.] should collapse emotionally or physically during cross-examination that a mistrial might have to be declared.

Although this reasoning is not articulated in the record before us, it is supported by the above information in the record about the condition of J.H. and her relationship to Estabrook.

Initially, we note that the trial court was entitled to control the mode of witness interrogation so as to more effectively ascertain the truth and to protect the witness from harassment or undue embarrassment. ER 611(a). Of course, the court could not exercise this control in a way that violated Estabrook's rights.

Regardless of the nature of the case or of the victim, a criminal defendant has a constitutional right to represent himself at trial. *Faretta v. California*, 422 U.S. 806, 818-21, 819 n.15, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975). *State v. Hahn*, 106 Wn.2d 885, 889, 726 P.2d 25 (1986); *State v. Fritz*, 21 Wn. App. 354, 585 P.2d 173, 98 A.L.R.3d 1 (1978), *review denied*, 92 Wn.2d 1002 (1979). "The right to defend is given directly to the accused; for it is he who suffers the conse-

quences if the defense fails." *Faretta*, 422 U.S. at 819-20.[3] It is undisputed that Estabrook demanded his right of self-representation by making a knowing, intelligent, and unequivocal demand before trial to proceed pro se. *State v. Hegge*, 53 Wn. App. 345, 348, 766 P.2d 1127 (1989).

Because the exercise of the right of self-representation "usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis." *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8, 79 L. Ed. 2d 122, 104 S. Ct. 944 (1984). Unjustified denial of the right requires reversal; no showing of prejudice is required. *Savage v. Estelle*, 924 F.2d 1459, 1466 (9th Cir. 1990), *cert. denied*, ___ U.S. ___, 115 L. Ed. 2d 1064, 111 S. Ct. 2900 (1991); *Flanagan v. United States*, 465 U.S. 259, 268, 79 L. Ed. 2d 288, 104 S. Ct. 1051 (1984).

We find no authority from the United States Supreme Court, the Ninth Circuit, nor Washington appellate courts that discusses a limitation of a defendant's right to personally cross-examine his child victim in terms of the right of self-representation.[4] Since we lack controlling authority on point, we turn to cases that illustrate the key purposes of the *Faretta* right.

■ In 1984, the United States Supreme Court considered the case of a pro se defendant who complained that unso-

---

[3] We note that as early as 1931, the Washington Supreme Court remarked that "a defendant may conduct his entire defense without counsel if he so chooses". *State v. Harding*, 161 Wash. 379, 383, 297 P. 167 (1931). By 1968, the court recognized a state constitutional right to self-representation, Const. art. 1, § 22 (amend. 10). *State v. Kolocotronis*, 73 Wn.2d 92, 97-98, 436 P.2d 774 (1968).

[4] In analyzing whether a *represented* defendant could be barred from a competency hearing for child victims, three Justices of the Supreme Court did declare that a pro se defendant would be entitled under *Faretta* to cross-examine the child victims. *Kentucky v. Stincer*, 482 U.S. 730, 753, 96 L. Ed. 2d 631, 107 S. Ct. 2658 (1987) (Marshall, J., dissenting).

In at least two cases, Washington appellate courts have noted that a pro se defendant cross-examined the victim without discussing the issue we face here. *State v. DeWeese*, 117 Wn.2d 369, 373, 816 P.2d 1 (1991); *State v. Strodtbeck*, 46 Wn. App. 26, 27, 728 P.2d 622 (1986), *review denied*, 107 Wn.2d 1033 (1987).

licited participation by standby counsel infringed on his *Faretta* right of self-representation. *McKaskle v. Wiggins*, 465. U.S. at 174. The *McKaskle* Court noted that "[a] defendant's right to self-representation plainly encompasses certain specific rights to have his voice heard", including the right "to question witnesses". *McKaskle*, at 174. However, *McKaskle* does not bar all unsolicited assistance from standby counsel. Instead, the Supreme Court created a 2-part test to determine when action of standby counsel would violate defendant's *Faretta* right. 465 U.S. at 176-78. "First, the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury." 465 U.S. at 178. "Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself." 465 U.S. at 178. "[T]he primary focus must be on whether the defendant had a fair chance to present his case in his own way", and "[t]he specific rights to make his voice heard[, which includes the right to question witnesses,] . . . form the core of a defendant's right of self-representation." *McKaskle*, 465 U.S. at 177.

When we apply the 2-part *McKaskle* test, we conclude that the court's procedure did not violate Estabrook's right to self-representation. First, it appears that Estabrook was permitted to maintain "actual control over the case he [chose] to present to the jury." He prepared the questions asked of J.H. He had the opportunity to ask followup questions. Furthermore, the judge was persistent in asking Estabrook's questions, rephrasing questions and obtaining answers when J.H. initially did not understand certain questions. Secondly, the procedure followed did not "destroy the jury's perception that [Estabrook was] representing himself." The court carefully explained to the jury several times that Estabrook was representing himself, and indeed, that that was the reason why the judge was asking the questions prepared by the defendant. After reviewing the entire record before this court, we are satisfied that Estabrook had a fair chance to present his case in his own way and to make his voice heard.

Furthermore, according to the record we have before us, Estabrook did not object to this procedure. Indeed, he was willing to follow a similar procedure to question one of his proposed witnesses, another child.[5] Estabrook thus agreed to the claimed limitation of his *Faretta* right by failing to object and essentially agreeing to the trial court's procedure. *See State v. Nicholas*, 55 Wn. App. 261, 269-70, 776 P.2d 1385, *review denied*, 113 Wn.2d 1030 (1989); *McKaskle*, 465 U.S. at 182-83. Although we do not expressly approve of the procedure used by the trial court, we conclude that under all the circumstances presented here Estabrook's right of self-representation was not violated.

Estabrook also cites to Const. art. 1, § 22 (amend. 10), but provides no argument that this section provides different or broader protection than the Sixth Amendment. Again, we will not consider state constitutional arguments absent briefing of the *Gunwall* criteria.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

PETRICH and MORGAN, JJ., concur.

Review denied at 121 Wn.2d 1024 (1993).

---

[5]The trial court would have allowed him to personally question this other child witness, indicating that the court imposed the J.H. cross examination procedure because of a desire to protect the victim from intimidation. The other child witness never testified.