Stacy Lynn PARTIN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2003–SC–0596–MR.

Supreme Court of Kentucky.

May 19, 2005.

Rehearing Denied Aug. 25, 2005.

Karen Maurer, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, State Capitol, Michael Harned, James Havey, Assistant Attorneys General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

COOPER, Justice.

A McCracken Circuit Court jury convicted Appellant, Stacy Lynn Partin, of kidnapping, two counts of unlawful imprisonment in the first degree, wanton endangerment in the first degree, wanton endangerment in the second degree, and assault in the fourth degree; and found him to be a persistent felony offender in the second degree. He was sentenced to life in prison. He appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), asserting four claims of reversible error, *viz*: (1) denial of his right of self-representation; (2) failure to sustain his motion to dismiss the indictment; (3) admission into evidence of portions of letters that he wrote to one of the victims and suppression of another

such letter and of letters written to him by the same victim; and (4) failure to grant a mistrial after the prosecutor engaged in a "tirade" against him. Finding no reversible error, we affirm.

On April 28, 2002, Appellant and his wife, Vicki, were visiting with Vicki's twenty-year-old son, Bobby Knight, inside the mobile home where Appellant and Vicki resided. Appellant became enraged when he noticed a "caller ID" number on their telephone that he believed to be the telephone number of Vicki's ex-boyfriend. When Appellant began choking Vicki, Bobby intervened and suggested that he and Vicki go to Bobby's residence "until things cooled down." Appellant then brandished a .25 caliber pistol, "put [it] to both of [their] heads [and] said the only way [they] were leaving was in a body bag." When Vicki grabbed Appellant, Bobby escaped through the front door, ran to a nearby residence, and told the occupants to call the police. Appellant then grabbed Vicki by the hair, forced her into her car, and drove her to the home of a friend, Ronnie Rudd. Appellant forced his way into Rudd's residence and held Rudd and others at gunpoint until police surrounded the residence and convinced Appellant to surrender. (Though Rudd attempted to extenuate the incident, he admitted that Appellant was armed when he entered his residence.)

## I. SELF–REPRESENTATION.

On June 6, 2003, two weeks before trial, the trial court held a hearing on Appellant's motion to act as co-counsel at his trial. Appellant expressed concern that his appointed counsel's workload was so heavy that she did not have time to devote full attention to his case. (He had also filed a complaint with the Kentucky Bar Association against his counsel claiming that she was not providing him with adequate representation.) During this hearing, Appellant expressed a desire to have input in jury selection, to cross-examine "certain witnesses" (not further identified), but to have his appointed counsel give the opening statement and the closing argument and examine other witnesses. After the hearing, the trial court received an *ex parte* letter from the victim's advocate advising that Appellant's wife was terrified of him, that she had received threats on her life and the life of her son, and that she was afraid Appellant would try to intimidate her and her son if permitted to personally cross-examine them. On June 9, 2003, the trial court entered an order sustaining Appellant's motion to act as co-counsel but denying him the right to personally conduct the cross-examination of the victims. Instead, the trial court allowed Appellant to prepare questions to be asked by his counsel during such cross-examination. The court placed the letter from the victim's advocate in the record.

The trial court held another hearing on the morning of trial, June 16, 2003, at which it expressed regret that it had received an *ex parte* communication from the victim's advocate, but reiterated that it did not believe Appellant should personally conduct the cross-examination of the victims. During this hearing, Appellant stated that he was "not objecting too loudly to not being allowed to cross-examine the victims," but that he wanted to cross-examine other witnesses and make his own opening statement and closing argument. He had prepared a number of questions to be posed by his counsel to the victims but agreed that counsel should exercise her own judgment during cross-examination so long as she generally followed Appellant's desired line of questioning. The trial court ruled that some of Appellant's proposed questions to Bobby Knight were improper, *e.g.*, "Have you been arrested a lot in your life and are you in jail now?"

and "Were you arrested once while staying at the [spouse abuse] shelter?" and "Did [Appellant] help bail you out of jail?" Defense counsel declined to ask other proposed questions, *e.g.*, "On the day your Mom married [Appellant], did you and your friend drive to the bar they were at?" and "Did her ex-boyfriend take you to bars sometimes?" and "Did your mother send you and a girl named Amanda to Illinois to buy more beer?" and "Did you drink a little whiskey while you were gone?" Appellant does not claim on appeal that counsel's failure to ask any particular question of one of the victims was reversible error—only that he should have been permitted to personally conduct the cross-examinations.[1]

In addition to preparing questions used to cross-examine the victims, Appellant conducted a portion of the voir dire (only to the extent of asking the jurors if any of them believed he was guilty and assuring them of his innocence), made his own opening statement, cross-examined the investigating officer, conducted the direct examination of four defense witnesses, and made his own closing argument (thrice informing the jury that there was other evidence of his innocence that had not been presented at trial). He also testified in his own behalf.

■ It is clear that Partin had the right, implicit under the Sixth Amendment of the United States Constitution and explicit under Section 11 of the Constitution of Kentucky, to decline representation by counsel and represent himself at his trial. *Faretta v. California*, 422 U.S. 806, 819–20, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975);

*Wake v. Barker*, 514 S.W.2d 692, 695–96 (Ky.1974). That, however, does not mean that he had a constitutional right to personally cross-examine the victim(s) of his crimes. In *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), the United States Supreme Court explained the extent, nature, and purpose of the right of self-representation.

> The *pro se* defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in *voir dire*, to question witnesses, and to address the court and the jury at appropriate points in the trial.
>
> . . .
>
> [However], [t]he right to appear *pro se* exists to affirm the dignity and autonomy of the accused and to allow the presentation of what may, at least occasionally, be the accused's best possible defense. Both of these objectives can be achieved without categorically silencing standby counsel.
>
> . . .
>
> [W]hether the defendant had a fair chance to present his case in his own way ... [and t]he specific rights to make his voice heard ... form the core of a defendant's right of self-representation.

*Id.* at 174, 176–77, 104 S.Ct. at 949, 950.

In *Fields v. Murray*, 49 F.3d 1024 (4th Cir.1995), a majority of an en banc United States Court of Appeals for the Fourth Circuit held that the trial court did not err in refusing to allow the defendant to personally cross-examine the victims who testified against him in his trial on child

---

1. In his concurring opinion, Justice Wintersheimer expresses concern that the trial court did not make a finding on the record that Appellant's waiver of counsel was "knowing, intelligent, and voluntary." *Hill v. Commonwealth*, 125 S.W.3d 221, 226 (Ky.2004). Appellant does not raise that issue as a claim of error on appeal. In fact, his claim is exactly the opposite—that the trial court erred by not permitting him to voluntarily, knowingly and intelligently waive his right to have counsel cross-examine the victims.

sexual abuse charges. Instead, the trial court permitted standby counsel to conduct the cross-examination and to ask questions written by the defendant. The Fourth Circuit likened this partial restriction on the right of self-representation to the partial restriction on the right of confrontation approved in *Maryland v. Craig*, 497 U.S. 836, 857, 110 S.Ct. 3157, 3170, 111 L.Ed.2d 666 (1990) (child sexual abuse victims permitted to testify against alleged abuser out of his presence and outside of the courtroom by closed circuit television); and held that the defendant's right to personally cross-examine the witnesses against him could be restricted if the purposes of the self-representation right would have been "otherwise assured," and if denial of personal cross-examination was necessary to further an important public policy. *Fields*, 49 F.3d at 1035.

> [W]hile Fields' ability to present his chosen defense may have been reduced slightly by not being allowed personally to cross-examine the girls, it would have been otherwise assured because he could have personally presented his defense in every other portion of the trial and could even have controlled the cross-examination by specifying the questions to be asked. As a result, we are convinced that the purposes of the self-representation right were better "otherwise assured" here, despite the denial of personal cross-examination, than was the purpose of the Confrontation Clause right in *Craig* when the defendant was denied face-to-face confrontation with the witnesses.

*Id.* at 1035–36.

In *State v. Estabrook*, 68 Wash.App. 309, 842 P.2d 1001 (1993), the defendant had no standby counsel, and the trial judge read the defendant's questions to the victim. Applying the *McKaskle* test, the court concluded that the procedure did not violate the defendant's right of self-representation.

First, it appears that Estabrook was permitted to maintain "actual control over the case he [chose] to present to the jury." He prepared the questions asked of J.H. He had the opportunity to ask follow-up questions. Furthermore, the judge was persistent in asking Estabrook's questions, rephrasing questions and obtaining answers when J.H. initially did not understand certain questions. Secondly, the procedure followed did not "destroy the jury's perception that [Estabrook was] representing himself." The court carefully explained to the jury several times that Estabrook was representing himself, and indeed, that that was the reason why the judge was asking the questions prepared by the defendant. After reviewing the entire record before this court, we are satisfied that Estabrook had a fair chance to present his case in his own way and to make his voice heard.

*Id.* at 1006. *See also State v. Taylor*, 562 A.2d 445, 453 (R.I.1989) (defendant was properly denied right to personally cross-examine victim upon finding that such cross-examination would harm victim).

■ It would have been the better course to hold an evidentiary hearing and make a finding of necessity similar to that required in *Craig*, 497 U.S. at 855–56, 110 S.Ct. at 3169, and *Price v. Commonwealth*, 31 S.W.3d 885, 894 (Ky.2000). However, the trial court did not conjure his decision out of thin air. He had before him the victim's advocate's letter, Appellant's prior history of criminal assaultive behavior (rape, robbery), and the allegation in this case that Appellant threatened to kill both his wife and his stepson while holding a gun to their heads. We agree with the conclusion reached by the Fourth Circuit in *Fields* that the failure to hold a *Craig*-

type evidentiary hearing on this issue did not violate Appellant's constitutional rights.

It is far less difficult to conclude that a child sexual abuse victim will be emotionally harmed by being personally cross-examined by her alleged abuser than by being required merely to testify in his presence. Further, the right denied here, that of cross-examining witnesses personally, lacks the fundamental importance of the right denied in *Craig,* that of confronting adverse witnesses face-to-face. As a result, we do not believe it was essential in this case that psychological evidence of the probable emotional harm to each of the girls be presented in order for the trial court to find that denying Fields personal cross-examination was necessary to protect them.

*Fields,* 49 F.3d at 1036–37. *Fields* acknowledged that the Massachusetts Supreme Judicial Court had held otherwise in *Commonwealth v. Conefrey,* 410 Mass. 1, 570 N.E.2d 1384, 1390–91 (1991), but specifically declined to follow its reasoning, *Fields,* 49 F.3d at 1037 n. 13—as do we.

Cross-examination can be used to attack the human components of the prosecution's case-in-chief through intimidation. In certain cases, the intimidation of the witness during cross-examination and the tactical advantage gained by it may exceed what the Constitution and fundamental fairness in the adversarial process require. William F. Lane, Note, *Explicit Limitations on the Implicit Right to Self–Representation in Child Sexual Abuse Trials: Fields v. Murray,* 74 N.C. L.Rev. 863, 894 (March 1996). Furthermore, KRE 611(a) provides that a trial court "shall exercise reasonable control over the mode ... of interrogating witnesses ... so as to ... [p]rotect witnesses from harassment or undue embarrassment." In the context of

a Confrontation Clause claim, the United States Supreme Court has held that "trial judges retain wide latitude ... to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety...." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). *See also Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (The Confrontation Clause only "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.").

[T]he defendant's right to proceed *pro se* exists in the larger context of the criminal trial designed to determine whether or not a defendant is guilty of the offense with which he is charged. The trial judge may be required to make numerous rulings reconciling the participation of standby counsel with a *pro se* defendant's objection to that participation; nothing in the nature of the *Faretta* right suggests that the usual deference to "judgment calls" on these issues by the trial judge should not obtain here as elsewhere.

*McKaskle,* 465 U.S. at 177 n. 8, 104 S.Ct. at 950 n. 8.

Appellant participated in the cross-examination of the victims by preparing questions to be asked, and he does not claim that counsel's cross-examination was deficient in any respect. The trial court's decision to require counsel to actually pose the questions to the victims was not an abuse of discretion and did not violate Appellant's right of self-representation.

## II. GRAND JUROR BIAS.

■ Appellant's indictment was rendered June 14, 2002. On the morning of

trial, June 16, 2003, Appellant made an oral motion to dismiss the indictment because the grand jury foreperson, Cliff Gill, who was also the jailer of McCracken County, had known Appellant for twenty-four years and had previously pressed charges against him. We note at the outset that while both the Sixth Amendment of the United States Constitution and Section 11 of the Constitution of Kentucky require a trial by an "impartial jury," neither the Fifth Amendment nor Section 12 require indictment by an "impartial grand jury." The United States Supreme Court has suggested that such is implicit in the Fifth Amendment. *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956) ("An indictment returned by a legally constituted and *unbiased* grand jury ... if valid on its face, is enough to call for trial of the charge on the merits." (emphasis added)). Obviously, the makeup of a grand jury can be challenged on the basis that, *e.g.*, the method of its selection was discriminatory. *See, e.g., Vasquez v. Hillery*, 474 U.S. 254, 262, 106 S.Ct. 617, 622, 88 L.Ed.2d 598 (1986); *Rose v. Mitchell*, 443 U.S. 545, 556, 99 S.Ct. 2993, 3000, 61 L.Ed.2d 739 (1979). However, with respect to individual grand jurors, most courts follow the view enunciated in *United States v. Knowles*, 147 F.Supp. 19 (D.D.C.1957):

> Challenges for bias, or for any cause other than lack of legal qualifications, are unknown as concerns grand jurors. No provision is made for peremptory challenges of grand jurors and no such challenges are permitted. Likewise no voir dire examination exists in respect to grand jurors. In other words, the status of a member of a grand jury may not be questioned except for lack of legal qualifications.

The basic theory of the functions of a grand jury, does not require that grand jurors should be impartial and unbiased.

In this respect, their position is entirely different from that of petit jurors. The Sixth Amendment to the Constitution of the United States expressly provides that the trial jury in a criminal case must be "impartial". No such requirement in respect to grand juries is found in the Fifth Amendment, which contains the guaranty against prosecutions for infamous crimes unless on a presentment or indictment of a grand jury. It is hardly necessary to be reminded that each of these Amendments was adopted at the same time as a part of the group consisting of the first ten Amendments. A grand jury does not pass on the guilt or innocence of the defendant, but merely determines whether he should be brought to trial. It is purely an accusatory body. This view can be demonstrated by the fact that a grand jury may undertake an investigation on its own initiative, or at the behest of one of its members. In such event, the grand juror who instigated the proceeding that may result in an indictment, obviously can hardly be deemed to be impartial, but he is not disqualified for that reason.

*Id.* at 20–21. *See also Estes v. United States*, 335 F.2d 609, 613 (5th Cir.1964); *In re Grand Jury of S. Dist. of Ala.*, 508 F.Supp. 1210, 1215 (S.D.Ala.1980); *United States v. Anzelmo*, 319 F.Supp. 1106, 1114 (E.D.La.1970); *Reed v. United States*, 383 A.2d 316, 322 (D.C.1978); *Creamer v. State*, 150 Ga.App. 458, 258 S.E.2d 212, 214 (1979); *People v. Edmond*, 86 Mich.App. 374, 273 N.W.2d 85, 92 (1978); *State v. Laskay*, 103 N.M. 799, 715 P.2d 72, 73 (App.1986); *State v. Beck*, 56 Wash.2d 474, 349 P.2d 387, 389 (1960).

Courts that have permitted challenges to indictments on grounds of grand juror bias have placed the burden on the defendant to show (1) that the grand juror was, in fact, biased and could not act impartial-

ly, *and* (2) excluding the biased grand juror's vote, the indictment was returned by fewer persons than required by law (nine in Kentucky, Ky. Const. § 248). *United States v. Fuentes,* 432 F.2d 405, 407 (5th Cir.1970); *Castle v. United States,* 238 F.2d 131, 136 (8th Cir.1956); *United States v. Remington,* 191 F.2d 246, 252 (2nd Cir.1951) (fact that grand jury foreman had financial interest in book being written by government's chief witness did not require dismissal of indictment absent proof of actual undue influence).

■■■ We need not dwell on the effect of the language in *Costello,* because the United States Supreme Court was therein interpreting the Grand Jury Clause of the Fifth Amendment, which has not been made applicable to the states by the Fourteenth Amendment. *Apprendi v. New Jersey,* 530 U.S. 466, 477 n. 3, 120 S.Ct. 2348, 2355 n. 3, 147 L.Ed.2d 435 (2000); *Hurtado v. California,* 110 U.S. 516, 534–35, 4 S.Ct. 111, 120, 28 L.Ed. 232 (1884). Our case law is in line with *Knowles.*

The grand jury proceeding is not a trial. Such a body does nothing more than accuse a person of the offense he is alleged to have committed. The grand jury is merely required to find an indictment where they have received what they believe to be sufficient competent evidence to support it. See RCr 5.10. Even if the two who are objected to [county attorney's wife and Department of Highways employee] were ineligible to sit, which ineligibility is not established, this is not a valid reason for quashing the indictment....

*Rice v. Commonwealth,* 387 S.W.2d 4, 5 (Ky.1965). *See also Hammer v. Commonwealth,* 332 S.W.2d 267 (Ky.1959), in which the foreman of the grand jury was one of the victims of the defendant's crime and actually testified during the grand jury proceedings. "It is readily apparent that

the giving of testimony by a grand juror is consistent with his duty as a grand juror and affords no ground for quashing the indictment." *Id.* at 268.

The trial court properly overruled Appellant's motion to dismiss the indictment on grounds that the grand jury foreperson was allegedly biased against him.

## III. ADMISSION AND SUPPRESSION OF EVIDENCE.

■■■ The Commonwealth introduced portions of ten letters written by Appellant to his wife, Vicki, while awaiting trial. The letters tended to suggest to Vicki that she falsify evidence in order help him obtain an acquittal. The letters were admissible under the admissions exception to the hearsay rule. KRE 801A(b)(1). Appellant claims, however, that the letters should not have been admitted because some of the pages were missing, thus precluding him from exercising his right under KRE 106 to introduce other parts of those writings that allegedly would have explained the seemingly inculpatory statements. However, as explained in *Soto v. Commonwealth,* 139 S.W.3d 827 (Ky.2004), "KRE 106 is a rule of admission, not exclusion.... It does not require the exclusion of a relevant portion of a document because other portions cannot be found." *Id.* at 865–66. The trial court did not err in admitting these writings.

■■■ During his own testimony, Partin sought to admit another letter he had written to Vicki that allegedly was exculpatory in nature. The trial court sustained the Commonwealth's objection to the admission of this letter, presumably because it was a prior consistent statement made after Appellant's motive to fabricate exculpatory evidence arose. KRE 801A(a)(2). Appellant did not offer the letter by way of avowal; thus, this claim of error was not

preserved for appellate review. KRE 103(a)(2); *Garrett v. Commonwealth,* 48 S.W.3d 6, 15 (Ky.2001). Appellant also claimed to have letters written to him by Vicki that would explain statements in his own letters. The prosecutor objected on grounds that the letters had not been furnished to him pursuant to an order of reciprocal discovery. The trial court indicated it would probably sustain the objection on that basis, but advised Appellant that "[i]f you want you can provide them to me. I'll look through them for a way to work around that." The record does not reflect that the letters were ever provided to the trial court, that Appellant ever moved for their admission into evidence, or that he offered them by way of avowal. Thus, this claim of error is also not preserved for appellate review.

### IV. MOTION FOR MISTRIAL.

During a recess in the trial and while the jurors were outside the courtroom, Appellant approached the bench and moved for a mistrial, "because me and the prosecutor had words, which the jury could have well heard. He asked me, 'Did I have a problem?'" The prosecutor explained that the incident occurred when Appellant accused him of unethical conduct because he had talked to one of Appellant's witnesses. Appellant referred to this incident as a "tirade." Since the exchange occurred during a recess, it is not part of the videotaped record. Appellant, however, did not dispute the prosecutor's assertion during the bench conference that no one's voice was raised. The jury was in the jury room and there is no evidence that the door was open. The trial court did not abuse its discretion in determining that there was no manifest necessity for a mistrial. *Shabazz v. Commonwealth,* 153 S.W.3d 806, 810–11 (Ky.2005); *Kirkland v. Commonwealth,* 53 S.W.3d 71, 75–76 (Ky. 2001).

Accordingly, the judgment of convictions and sentences imposed by the McCracken Circuit Court are affirmed.

LAMBERT, C.J.; GRAVES, JOHNSTONE, and SCOTT, JJ., concur.

WINTERSHEIMER, J., concurs by separate opinion.

KELLER, J., dissents by separate opinion.

WINTERSHEIMER, Justice, concurring.

I concur in the result achieved by the majority opinion, but I write separately to express my concern about reconciling *Hill v. Commonwealth,* 125 S.W.3d 221 (Ky. 2004), with our reasoning today.

Partin wished to have an active role in his defense. A defendant has a state and federal constitutional right to proceed without a lawyer. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Ky. Const. § 11. *Hill, supra,* held that the trial court was required under the Kentucky Constitution § 11 to grant the defendant's request to serve as co-counsel, where he sought a limited waiver of counsel in order to examine and cross-examine certain witnesses, by himself, in prosecution for engaging in organized crime. A majority of this Court held in *Hill* that the trial court has "*Faretta, supra,* duties" when a defendant makes a limited waiver of counsel. These include: (1) holding a hearing in which the defendant testifies on the question of whether the waiver is voluntary, knowing, and intelligent; (2) warning the defendant of the hazards arising from and the benefits relinquished by waiving counsel; and (3) making a finding that the waiver is knowing, intelligent, and voluntary. Furthermore, it was held that this is a structural issue and the waiver is ineffective without all the elements.

At the hearing to appoint co-counsel, defense counsel stated that Partin insisted on having an active role. The trial judge warned Partin that his assigned attorney was very familiar with trial strategies and competent in defense work and that he would be losing her expertise in preparing a trial for him. Partin argued on his own behalf that he felt no one else had as much interest in his case as did he. Thus, he desired to "drive the car" himself. He made this point several times. Even his opening argument to the jury began with Partin explaining to the jury that he felt his own life was in the balance and, therefore, he must have a part in making his own defense.

The trial judge warned Partin about the dangers and explained that there were rules to be followed in court. Partin explained to the court that he had been studying the rules of court and rules of evidence. He reaffirmed many times that he felt best situated to present the facts of his case and manage the interrogation of witnesses because he had conducted his own investigations. Partin said he wanted the assistance of counsel for matters of following procedure, handling voir dire, and for following the trial process itself.

The prosecutor questioned the fairness to its case of allowing Partin to proceed as co-counsel. He said he feared that if Partin perceived the case was not going favorably, he would break rules knowingly to create a mistrial. The prosecutor explained that contempt for 30 days was no deterrent against life imprisonment. In fact, Partin broke several admonishments from the trial judge, eventually being held in contempt of court with a 30–day sentence.

Contrary to the requirements framed by the majority in *Hill,* the record here lacks a direct finding by the trial judge that Partin's waiver was knowing, intelligent, and voluntary. Therefore, I must reluctantly view the reasoning in this case to appear to be at variance with *Hill.* Thus, I concur in result only.

KELLER, Justice, dissenting.

I respectfully dissent because the trial court clearly violated Appellant's Sixth Amendment[1] right to self-representation by prohibiting him from personally cross-examining the victims.

Time and again, courts, including this Court, have honored the right of an accused to defend him or herself and to question witnesses as guaranteed by the Sixth Amendment.[2] Although "[t]he right of self-representation is not a license to abuse the dignity of the courtroom" or to ignore the "relevant rules of procedural and substantive law,"[3] it is not a right to be taken lightly, as the trial judge may only terminate it when "a defendant ... deliberately engages in *serious and obstructionist misconduct.*"[4] But here, without any evidence of disruptive, disorderly, or disrespectful behavior by Appellant, the trial court banned Appellant from cross-examining the victims due to the

---

1.  Although Appellant also has a right of self-representation under Section 11 of the Kentucky Constitution, for the sake of brevity, I will refer only to his Sixth Amendment right of self-representation.

2.  *See, e.g., McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Mason v. Mitchell,* 320 F.3d 604 (6th Cir.2003); *Wake v. Barker,* 514 S.W.2d 692 (Ky.1974).

3.  *Faretta,* 422 U.S. at 834, 95 S.Ct. at 2541 n. 46.

4.  *Id.* (second and third emphases added).

concerns of a victim's advocate, which were communicated ex parte to the trial court, that the victim-witnesses might be intimidated if Appellant questioned them. This was error.

As the United States Supreme Court has pointed out, in a passage that the majority opinion also quotes:

> A defendant's right to self-representation plainly encompasses certain specific rights to have his voice heard. The *pro se* defendant *must* be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, *to question witnesses*, and to address the court and the jury at appropriate points in the trial.[5]

"The specific right[ ] to make his voice heard ... form[s] the core of a defendant's right of self-representation." [6]  And if only standby counsel is allowed to question witnesses, i.e., "to speak *instead* of the defendant on [a] *matter of importance*," the defendant's right of self-representation is eroded.[7]  In the present case, requiring standby counsel to conduct cross-examination of the victims over Appellant's objection clearly violated this right. Appellant had no choice as to whether counsel would be helpful in cross-examining the victims, and "forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." [8]

The Massachusetts Supreme Court in *Commonwealth v. Conefrey* [9] evaluated a trial court's similar ban on a defendant personally cross-examining the victim and determined that a restriction based on perceived harm violated the defendant's Sixth Amendment rights.  The *Conefrey* Court's words are equally applicable here:

> The judge appears to have concluded, based on his own experience and feelings as to this trial ... that trauma and intimidation of the complainant, and possibly untruthful answers, would be the inevitable result of the defendant cross-examining the complainant....
>
> The record contains nothing to show that the defendant intended to exploit or manipulate the right of self-representation for ulterior purposes.  There is also no indication that the defendant's questioning of the complainant would harm her, that it would violate the rules of evidence and protocol which normally apply in this sort of trial, or that the complainant would not respond truthfully to his questions....  "The possibility that reasonable cooperation may be withheld, and the right later waived, is not a reason for denying the right of self representation from the start."  *United States v. Dougherty*, [473 F.2d 1113, 1126 (D.C.Cir.1972) ].
>
> There also can be no question that cross-examination of witnesses, in particular the principal accuser of the defendant, is a fundamental component of the right of self-representation....
>
> The *mere belief* held by the judge that the complainant could be intimidated or harmed beyond the normal limits associated with a trial involving a young complainant, or that she might respond untruthfully if she was questioned by the

---

**5.**  *McKaskle,* 465 U.S. at 174, 104 S.Ct. at 949 (emphasis added); *accord Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974) ("Confrontation means more than being allowed to confront the witness physically."); *Chambers,* 410 U.S. at 295, 93 S.Ct. at 1046 (1973) ("The right of cross-examination is more than a desirable rule of trial procedure.").

**6.**  *McKaskle,* 465 U.S. at 177, 104 S.Ct. at 950.

**7.**  *McKaskle,* 465 U.S. at 178, 104 S.Ct. at 951.

**8.**  *Faretta,* 422 U.S. at 817, 95 S.Ct. at 2532.

**9.**  410 Mass. 1, 570 N.E.2d 1384 (1991).

defendant, is not sufficient to justify the restriction placed on cross-examination.[10]

The majority opinion cites several cases that have held that restricting a defendant's personal cross-examination of a victim was not error.[11] The difference between those cases (and, for that matter, *Conefrey* ) and this case is that Appellant's victims were not subjected to sexual abuse. While the victims in this case are no less "victims" because the crime committed against them was not a form of sexual assault or abuse, American jurisprudence has recognized that sex crimes, especially those committed against children, are simply different because the nature of these crimes presents a heightened potential for retraumatizing the victim at trial.[12] The concerns about further trauma to the victims that drove the judges to limit the defendants' rights to personally cross-examine their victims in the cases cited in the majority opinion simply were not present in this case. The majority opinion, however, fails to recognize the distinction and instead broadens the rule in Fields to include all crime victims. The effect of such a rule is to put an end to the truly pro se defendant who chooses to proceed without counsel at all. Such a defendant would never have a chance to cross-examine the alleged victim, and would, in effect, be forced to accept the help of counsel regardless of whether the cross-examination actually presented a heightened potential for retraumatizing of the victim.

The denial of a defendant's right to personally cross-examine the victims cannot be dismissed as harmless error on the basis that his or her appointed standby attorney effectively questioned the witnesses. This is because the harmless error analysis is inappropriate when addressing the right of self-representation: "Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless."[13] Nevertheless, "it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense"[14] since "[f]rom the jury's perspective, the message conveyed by the defense may depend as much on the messenger as on the message itself."[15] In this case, the "jury might have received a significantly different impression" of the victims' credibility had Appellant himself been permitted to cross-examine them.[16] This is especially so

10. *Id.* at 1390–91.

11. *See Fields v. Murray,* 49 F.3d 1024 (4th Cir.1995); *State v. Estabrook,* 68 Wash.App. 309, 842 P.2d 1001 (1993); *State v. Taylor,* 562 A.2d 445, 453 (R.I.1989).

12. *See, e.g., Maryland v. Craig,* 497 U.S. 836, 851, 110 S.Ct. 3157, 3167, 111 L.Ed.2d 666 (1990) (allowing child sex abuse victim to testify outside of the presence of the defendant because of the compelling state interest in protecting "minor victims of sex crimes from further trauma and embarrassment").

13. *McKaskle,* 465 U.S. at 177 n. 8, 104 S.Ct. at 950; *accord Neder v. United States,* 527 U.S. 1, 8, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35, 46 (1999) ("Indeed, we have found an error to be 'structural,' and thus subject to automatic reversal, only in a 'very limited class of cases'.... *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self-representation at trial)").

14. *Faretta,* 422 U.S. at 834, 95 S.Ct. at 2540.

15. *McKaskle,* 465 U.S. at 179, 104 S.Ct. at 951.

16. *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674, 684 (1986).

when we consider that the victims were the key witnesses against Appellant. Thus in addition to the Constitutional infringement, the Appellant may have also suffered actual harm from the trial court's denial of his Sixth Amendment right to personally cross-examine the victims.

I would also note that the right of self-representation in Kentucky's Constitution is broader than that contained in the United States Constitution.[17] We have specifically held that the right in Kentucky is more expansive than the reading of the Sixth Amendment in *McKaskle,* and "that 'an accused may make a limited waiver of counsel, specifying the extent of services he desires, and he then is entitled to counsel whose duty will be confined to rendering the specified kind of services (within, of course, the normal scope of counsel services).'"[18] Surely this right to limit stand-by or co-counsel to certain services includes the right to direct who cross-examines the victim.

And though a trial court has the discretion to limit scope of cross-examination[19] or to assign the presentation of the defense to standby counsel when defendant's conduct is disruptive, disorderly, or disrespectful,[20] this discretion is abused when a trial court implements a prospective bar on a defendant's right to personally cross-examine his or her accusers when the defendant has not engaged in such behavior. The majority opinion expands the rule in an attempt to erase the trial court's mistake in this regard. The core of the Confrontation Clause, however, is the right to confront one's accuser,[21] and no one is more likely to be such an accuser than the alleged victim of a crime. To create a rule that exempts the primary accuser from questioning by the defendant serves only to gut the Confrontation Clause and the right to proceed pro se. For this reason, I respectfully dissent. Accordingly, I would reverse and remand this case to the trial court for a new trial.

**17.** *Hill v. Commonwealth,* 125 S.W.3d 221 (Ky.2004).

**18.** *Id.* at 225 (quoting *Wake v. Barker,* 514 S.W.2d 692, 696 (Ky.1974)) (emphasis added).

**19.** *Mason v. Mitchell,* 320 F.3d 604, 633 (6th Cir.2003).

**20.** *Wake v. Barker,* 514 S.W.2d 692, 697 (Ky. 1974).

**21.** *California v. Green,* 399 U.S. 149, 157, 90 S.Ct. 1930, 1934–35, 26 L.Ed.2d 489 (1970) ("[I]t is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause.").