Nicholas L. DEPP, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2007–SC–000575–MR.

Supreme Court of Kentucky.

Feb. 19, 2009.

As Modified March 10, 2009.

Susan Jackson Balliet, Assistant Public
Advocate, Department of Public Advocacy,
Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, James C. Shackelford, Assistant Attorney General, Office of Criminal Appeals, Attorney General's Office, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

Nicholas Depp, Appellant, was convicted of first-degree rape and first-degree sodomy, and was sentenced to fifteen years' imprisonment on each count, to run consecutively for a total of thirty years. He filed this appeal as a matter of right pursuant to Ky. Const. Section 110(2)(b).

A detailed recitation of the facts underlying Appellant's convictions is not necessary for analysis of the issues he raises in this appeal. Suffice it to say that Appellant and the alleged victim differed about whether their sexual encounters were consensual. The jury obviously believed the victim's version of events. The underlying facts of the offense, however, are not relevant to the issues in this case.

Appellant raises four issues on appeal: (1) the trial court failed to follow proper procedure under *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); (2) the trial court failed to inform Appellant he could control standby counsel and failed to appoint standby counsel; (3) the trial court mislead him regarding service of subpoenas and refused to grant a continuance; and, (4) the trial court erred by not inviting Appellant to the bench during individual voir dire of potential jurors. Finding no error, this Court affirms.

## I. Appellant's Self–Representation

■ Before the Appellant was even indicted, he wrote a letter to the trial court expressing his wish to represent himself, but recognizing the need for assistance: "[W]ith the hopes in receiving legal rep., for my up and coming jury trial, Judge Patton, I truly intended on representing myself, however I am unable to because of the many motions that need to be filed...." He had strong opinions about the kind of attorney he needed, because, as he wrote, "I wouldn't want to get in the middle of this trial, and be forced to let my attorney go, because he or she slacks off because they don't wish to embarrass these two women...."—clearly demonstrating that he knew he was in control of his defense and what his attorney might do.

When Appellant appeared for his arraignment, he reminded the trial court of his letter, and the court offered to appoint a public defender. By that time, Appellant had decided to "just go it alone." The trial court emphasized that the public defender had a high success rate at trial, but Appellant resisted. At that point, *the trial court suggested that it appoint standby counsel, with whom Appellant could consult.* The only person Appellant wanted was a jail inmate, but the trial court explained that the inmate could not represent him. Since Appellant continued to want to represent himself, the trial court told him a hearing under *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), was required, set a date for the hearing, informed the Appellant of the charges against him, gave him a copy of the indictment and entered a plea of not guilty.

Subsequently, at the *Faretta* hearing, Appellant indicated that he now wanted a lawyer, but wanted to pick his own attorney, and again asked for the jail inmate. Again, the trial court praised the public defender's office, and explained that the inmate was not an attorney and thus could not represent the Appellant. Instead, the court was going to appoint the public defender. Appellant refused, saying he would rather cross-examine the victim witness himself. The trial court told Appel-

lant that the attorney would ask the questions, but that Appellant could confer with the attorney, and had begun to explain further what the Appellant could say, when he interrupted, "Well, okay, I don't want no attorney. I'm just going to not have an attorney."

At that point, the Commonwealth Attorney inserted the position that if Appellant represented himself, he would not have a constitutional right to cross-examine the victim witness pursuant to *Partin v. Commonwealth*, 168 S.W.3d 23 (Ky.2005). The trial court stated that would be dealt with "when the time comes," and proceeded with the *Faretta* hearing, ascertaining that Appellant understood he would have to abide by the rules of court and the rulings made by the trial court, and that he was competent and not coerced into representing himself. The trial court required Appellant to put his request to represent himself in writing and sign it in open court, and concluded, "Okay, I'm going to make a finding that you can represent yourself."

█ Appellant has a right under the Sixth Amendment of the United States Constitution to reject counsel and represent himself during a criminal proceeding. *Faretta*, 422 U.S. at 807, 95 S.Ct. 2525. However, the relinquishment of the right to counsel must be made "knowingly and intelligently." *Id.* at 835. *Faretta* did not require any specific form or magic words for there to be a knowing and voluntary choice to proceed pro se. It only required that the concerns it notes be addressed.

Following *Faretta*, this Court adopted a formulaic approach in determining whether a defendant waived counsel "knowingly, intelligently and voluntarily." *Hill v. Commonwealth*, 125 S.W.3d 221, 226 (Ky. 2004). However, shortly after *Hill*, the United States Supreme Court stated the following:

We have not, however, prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election, our decisions indicate, will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding. *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004).

In *Tovar*, the defendant, who was charged with drunken driving, told the trial court he wanted to represent himself and to plead guilty. The court then conducted the guilty-plea colloquy explaining the rights the defendant would have if he pleaded not guilty, and what would happen in regard to his rights if he instead pleaded guilty. The court explained the penalty ranges and the elements of the offense, and then accepted the guilty plea. *Tovar* was later sentenced to two days' incarceration. However, he had two subsequent DUI convictions, with representation of counsel. On the third occasion, he was charged with a felony, using the two prior convictions as enhancement. He resisted the felony charge by arguing that his first conviction must be excluded because his waiver of counsel was invalid. The trial court denied his motion, and sentenced him to the felony. The Iowa Court of Appeals affirmed, but the Iowa Supreme Court reversed and remanded for entry of judgment without considering the first conviction. The United States Supreme Court took review to clarify the requirements the Sixth Amendment imposes on waiver of counsel, as the federal courts were divided on the issue.

While *Tovar* involves waiver of counsel to enter a guilty plea, the U.S. Supreme Court pointed out that the analysis regard-

ing whether waiver of counsel is adequate at any stage requires a pragmatic approach to right-to-counsel waivers, one that asks, " 'what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance [counsel] could provide to an accused at that stage'...." *Id.* at 89, 124 S.Ct. 1379 (quoting *Patterson v. Illinois,* 487 U.S. 285, 298, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988)). While what is required at different stages of the trial may vary, the Court clarified as to the Sixth Amendment that the constitutional minimum for determining whether a waiver was "knowing and intelligent" is that the accused be made sufficiently aware of his right to have counsel present and of the possible consequences of a decision to forgo the aid of counsel. Since *Faretta* dealt with the defendant's right to represent himself at *trial,* and the concomitant right to not have counsel forced upon him, the U.S. Supreme Court held that the record must establish that he "knowingly and intelligently" chose to forgo the benefits of an attorney. The U.S. Supreme Court, looking at the *record,* determined that Tovar did voluntarily exercise his informed free will because of his personal characteristics and because the trial court had warned him that it was a mistake not to accept assistance of counsel and that he would be required to follow the rules of trial procedure. No "magic words" or formulaic approach were required.

This Court, in *Hill,* reiterated the *Faretta* holding that an accused was entitled to self-representation, or in that instance, co-representation. More specifically, however, the Court commented that this right was accompanied by the right to be informed by the trial court of the dangers inherent in doing so. The Court determined that the trial court must hold a hearing at which the defendant must testify that his choice is voluntary, knowing and intelligent; the trial court must warn the defendant of the dangers of relinquishing the benefits of an attorney; and the trial court must make a finding on the record that the waiver is voluntary, knowing and intelligent.

Clearly, this is a bright-line approach. But there are so few bright lines in law because most things are just not that simple. This case is a good illustration of why imposing rigid requirements in every instance is not necessary because it is clear the defendant indeed knew what he was doing, and why doing so would undermine judicial economy

In this case, Appellant asked to represent himself. At his arraignment, the possibility of standby counsel was discussed and Appellant rejected this because he could not be represented by his jailhouse "lawyer." Appellant was offered assistance from DPA at both appearances before the trial court, and rejected this because he could not choose his attorney and because he wanted to cross-examine the witnesses himself. At the *Faretta* hearing, Appellant was warned of the dangers of self-representation. He was informed he would have to follow the rules of the court. Appellant put his waiver in writing and the trial court made an oral finding that he could represent himself. In making that finding, the court had the benefit of knowing all the discussions it had with the Appellant, and it was aware that the Appellant knew and understood.

Appellant now claims that because the trial court did not use the magic words that it found the waiver of counsel to be done "knowingly and voluntarily," reversible error has been committed. However, the notion that a specific script or "magic words" is required was clearly rejected in *Tovar,* and while this Court could certainly impose *more* requirements than the feder-

al courts, if we do so, it should be meaningful. To reverse simply because the trial court did not specifically state that the waiver was "voluntary, knowing and intelligent" does nothing to ensure that the defendant had the opportunity to make such a waiver. Only the *record* can do that.

In fact, even if the trial court had used those magic words, an appellate court would still have to review the *record* to determine whether that finding was correct.

The legal analysis in *Hill* is correct, and the result is just under the facts of that case, so to overrule it is not required. However, to the extent *Hill* purports to require a rigid, formulaic review of waiver of counsel, it is modified to comport with common sense. If this case had been tried in federal court, under *Faretta* and *Tovar* the judgment would stand. Prior to *Hill,* Kentucky law's only departure in this area was the allowance of a partial waiver of the right to counsel under the Kentucky Constitution. The waiver requirements were the same. Therefore, the claim after *Tovar* that *Hill*'s overly rigid requirements are still sound law and that the waiver requirements in Kentucky are more expansive, is unsustainable. *Hill* itself purports to follow *Faretta.* The requirements under *Faretta* as to waiver of counsel are all that should be applied in this case.

The trial court implicitly found the waiver to be done knowingly, intelligently, and voluntarily when, based on the sufficiently developed record, he said he was going to "find" that Appellant could represent himself. While it is always preferable to have express findings by the trial court on record, as it usually clarifies issues on appeal, to require that trial courts adhere to a script or be found in error is to elevate form over substance.

Appellant's argument that the trial court failed to explore the parameters for standby counsel, failed to inform Appellant he could control standby counsel and failed to appoint standby counsel is not supported by the record. Appellant did not ask for standby counsel, although now he argues that he ultimately decided to represent himself based on the trial court erroneously informing him that if he had an attorney, he would not be able to cross-examine the witnesses personally and that he would have been able to retain this right. In fact, the trial court was attempting to explain that if it appointed an attorney, the attorney would be conducting the questioning of the victim witness, but that Appellant would have input. This was a decision well within the trial court's discretion under *Partin,* and does not require a separate hearing any more than most discretionary decisions do. In fact, *Partin* itself approved a trial court's decision not to allow the defendant to personally cross-examine the victim without first conducting a hearing because it "was not an abuse of discretion and did not violate Appellant's right of self-representation." *Partin,* 168 S.W.3d at 29.

A defendant "confronts" an alleged victim by his presence during questioning, and has no constitutional right to intimidate a victim witness by personally questioning him or her. His interest is sufficiently protected when the judge asks questions that he has provided. It is within the judge's sound discretion whether to allow the defendant to question a victim witness, and it would be difficult to imagine a scenario where that discretion had been abused when the judge did not allow an alleged perpetrator to question an alleged victim of a sexual assault directly. *See id.* at 28–29.

Under the procedural history of this case, and the legal aspects of what the Appellant wanted to do, the trial court did not belabor the point about standby coun-

sel because it was obvious further discussion would make no difference, since the issue for Appellant concerned what he himself might be able to do, not counsel.

In this case, it is clear from the record that the trial court discussed self-representation issues with the Appellant on two separate occasions, made an adequate record for this Court to review for content, and adequately complied with any duties it had with regard to Appellant's representation. To require more here would create an injustice to the victim and the trial court. There was no error.

## II. Appellant's Witnesses

■ Appellant also argues that he was unable to secure two witnesses due to the trial court misadvising him about the service of subpoenas and that he should have been granted a continuance. However, Appellant announced that he was ready to proceed to trial, knowing the witnesses had not been located. He did not request a continuance or other specific relief before the trial began.

■ Because this alleged error was not preserved for appellate review, the Court will reverse only if it constitutes palpable error under RCr 10.26. A palpable error is one that "affects the substantial rights of a party" and will result in "manifest injustice" if not considered by the court. *Schoenbachler v. Commonwealth*, 95 S.W.3d 830 (Ky.2003) (citing RCr 10.26). Recently this Court clarified that the key emphasis in defining such a palpable error under RCr 10.26 is the concept of "manifest injustice." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky.2006). "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Id.* Having reviewed Appellant's arguments, his willingness to proceed without objection leads the Court to conclude that there was no manifest injustice. The alleged error was not "shocking or jurisprudentially intolerable." *Id.* at 4. Therefore, it cannot be considered palpable and is not grounds for reversal.

## III. Jury Selection

During voir dire, the trial court asked the jurors to approach individually to answer questions regarding their exposure to media coverage of Appellant's case. Appellant claims that the trial court erred in failing to invite him to the bench during this questioning. The trial court informed Appellant before the trial began that he was going to ask the jurors about the newspaper articles at the bench and that either party could ask the jurors questions. Neither the prosecutor nor Appellant approached the bench during this portion of voir dire. However, there is nothing in the record to indicate that he was precluded from approaching and he did not ask to approach.

■ As the U.S. Supreme Court has stated, "whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Faretta*, 422 U.S. at 834 n. 46, 95 S.Ct. 2525. There was no error.

## IV. Conclusion

For the reasons stated herein, the judgment and sentence of the Barren Circuit Court is affirmed.

CUNNINGHAM, SCOTT and VENTERS, JJ., concur. ABRAMSON, J., concurs in result only. MINTON, C.J., dissents by separate opinion in which SCHRODER, J., joins.

Dissenting Opinion by Chief Justice MINTON.

Respectfully, I dissent because I cannot agree with the majority's conclusion that this record supports the trial court's implicit finding that Depp's waiver of his constitutional right to counsel was "knowing, intelligent, and voluntary." [1]

On the heels of Depp's withdrawal of his request to represent himself, the Commonwealth stated: "Your honor, just so we're clear, if he's getting an attorney—one of the things that I was going to file if he was representing himself is a motion to prevent him from cross-examining the victims, and there's some case law on that—." The Commonwealth and the trial court discussed the motion and other matters in the case, and then there was a moment of silence. Upon reflection of the Commonwealth's statement pertaining to cross-examination, Depp broke the silence by stating: "By the way, your honor, if I can't cross-examine the people that's brought me here, then I don't think I would take an attorney, but if I can, then—." The following dialogue ensued:

COURT: Well, okay—

DEPP: I want to be the one asking the questions. These people that's brought me here—

COMMONWEALTH: Okay, which, we'll go ahead and file a motion on that asking you to prohibit him—

DEPP: Prohibit me?

COURT: Okay, let me make sure that I understand what you're asking me, Mr. Depp.

DEPP: These people that's brought these allegations against me—

COURT: Okay.

DEPP: Well, I should have the right to come in front of you, with all due respect, in front of the jury, with all due respect, and ask these people these questions, the things that they say that I have done to them, times, places—

COURT: Okay, let me make sure that I, I had thought that you had decided you wanted me to appoint you a lawyer.

DEPP: Yes, I do.

COURT: If I appoint you a lawyer, then your attorney asks those questions. You don't. Now, you can confer with your attorney. You can say—

DEPP: Well, okay, I don't want no attorney. I'm just going to not have an attorney.

COMMONWEALTH: Which, your honor, that would be part of our motion because there is case law—

COURT: Okay, we'll deal with that when the time comes.

COMMONWEALTH: So, if he's deciding not to have an attorney now, are we going to have a hearing?

DEPP: I just don't know. Let's just have a hearing.

COURT: Okay. Let's proceed then with this, what I have to do to let you represent yourself. All right. I've got to make a determination whether you are competent to represent yourself. Now, that doesn't mean that you graduated from law school. It just

---

1. *Hill v. Commonwealth*, 125 S.W.3d 221, 226 (Ky.2004) (holding that a trial court has three clear duties to perform in situations in which a defendant seeks to waive his or her constitutional right to counsel: (1) the trial court must hold a hearing during which it questions the defendant on the issue of whether the waiver of counsel is knowing, intelligent, and voluntary; (2) "during the hearing, the trial court must warn the defendant of the hazards arising from and the benefits relinquished by waiving counsel[;]" (3) the trial court "must make a finding on the record that the waiver is knowing, intelligent, and voluntary.").

means that you are familiar enough with the procedure that you can represent yourself. So let me ask this, have you ever been determined, Mr. Depp, to be incompetent by any court?

DEPP: No, sir.

COURT: Have you ever been treated for any mental disease or defect?

DEPP: No, sir.

COURT: Have you—are you addicted to any controlled substances?

DEPP: No, sir.

COURT: Are you under the influence of any drugs or alcohol today?

DEPP: Absolutely not.

COURT: Now, I want to—I've got to warn you that in court, we have rules of procedure, you know, like who goes first and who asks the questions, then when it's your time to ask questions, when it's their time to ask questions. Do you understand that you will be expected to follow those same rules?

DEPP: Yes, but I can object—

COURT: You can object—

DEPP: At any time?

COURT: Right, but if I make a ruling on an objection, and I overrule your objection, then it has to go the way I say. Do you understand that?

DEPP: Yes, you the man. Yes sir, I understand that.

COURT: Now, I need—the disadvantage of you representing yourself is, even though you have some experience in court, you didn't go to law school—

DEPP: No, sir.

COURT: But you understand that I'm going to make you follow the rules even though you didn't.

DEPP: I understand.

COURT: So that's a hazard of representing yourself.

DEPP: I understand.

COURT: Now, do you want then to represent yourself?

DEPP: Yes, I do.

COURT: Okay, I need for you to put that request in writing.

At this point, the trial court provided Depp with paper; and Depp wrote and signed the following request:

Sir, I would like to represent myself in both these cases because [I] am afraid that all the facts will not come out at trial if [I] use [a] public defender [and] want badly to question my accuser[s][and] witnesses[.]

The trial court then continued with the questioning:

COURT: Now just a couple of more questions I want to ask you, Mr. Depp. Did anyone make any threats against you to cause you to make this decision to represent yourself?

DEPP: No, sir.

COURT: Did anyone make any promises to you to cause you to want to represent yourself?

DEPP: No, sir.

COURT: Has any member of the court, law enforcement, corrections, anyone else, tried to convince you that you should represent yourself?

DEPP: No, sir.

COURT: So are you acting of your own free will?

DEPP: Yes, sir.

COURT: Okay I'm going to make a finding that you can represent yourself.

And the trial court made the following written entry in the record: "Pursuant to written request and after a hearing per

*Faretta v. Calif.*[2] the Defendant may represent himself."

I commend the trial court for its patience in addressing Depp's indecision about what he truly wanted, but I believe that the hearing was insufficient to ensure that Depp's decision to forego counsel was knowing, intelligent, and voluntary. More specifically, the trial court erred by informing Depp that if he appointed counsel, the attorney—not Depp—would conduct the examination of any witnesses. In Kentucky, "an accused may make a limited waiver of counsel, specifying the extent of services he desires, and he then is entitled to counsel whose duty will be confined to rendering the specified kind of services (within, of course, the normal scope of counsel services)."[3] Here, the trial court prophylacticly foreclosed Depp's right to make a limited waiver of counsel by telling Depp that if it appointed counsel for him, Depp would not be able to cross-examine the Commonwealth's witnesses. It is apparent, based both on Depp's statements in the hearing and his written request, that the desire personally to question the Commonwealth's witnesses was the heart of his desire to waive counsel. Of course, a defendant is not necessarily entitled personally to cross-examine each witness, especially the victim.[4] But a defendant proceeding with standby counsel should be able at least to participate in cross-examination by preparing questions he desires his standby counsel to ask his accusers.[5]

Or, presumably, a defendant proceeding with standby counsel may personally be allowed to cross-examine some of the Commonwealth's witnesses (for example, investigating police officers who would not generally be as emotionally involved or subject to intimidation as would an alleged victim). Likewise, a self-represented defendant may presumably personally cross-examine at least some of the Commonwealth's witnesses while also, if necessary, at least being able to write questions for the trial judge to ask of other witnesses (i.e., the victim).[6] Moreover, a trial court should hold an evidentiary hearing before declining to permit a self-represented litigant to cross-examine witnesses.[7]

In the case at hand, however, the trial court seemingly foreclosed, without explanation or evidentiary hearing, any possibility that Depp would be able personally to cross-examine any of the Commonwealth's witnesses or to take any other meaningful role, such as assisting his counsel in the preparation of questions. In other words, the trial court erred, in my view, by presenting the questioning of witnesses as an all-or-nothing proposition.

Moreover, the colloquy between the trial court and Depp did not contain a thorough warning by the trial court of the benefits Depp would relinquish if he persisted in his desire to proceed without an attorney. Instead, the trial court merely told Depp that even though Depp had not gone to law school, he would be expected to follow

2. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

3. *Wake v. Barker,* 514 S.W.2d 692, 696 (Ky. 1974) (recognizing hybrid representation and expressing conclusion "that this is embraced within the right-to-counsel and equal-protection provisions of the federal and state constitutions.").

4. *Partin v. Commonwealth,* 168 S.W.3d 23, 27 (Ky.2005) (holding that a trial court did not

abuse its discretion by refusing to permit defendant who was acting as his own co-counsel from personally cross-examining alleged victims who defendant had allegedly threatened and intimidated).

5. *Id.* at 28–29.

6. *Id.* at 28.

7. *Id.*

the procedural rules of court. This cursory exchange was insufficient fully to "warn the defendant of the hazards arising from and the benefits relinquished by waiving counsel." [8] Of course, although I do not believe it wise or necessary to set forth definitively what a trial court must discuss with a defendant who seeks to proceed without an attorney, I note that many of the typical facets of a proper colloquy between the trial judge and the defendant have been set forth in a learned treatise and cases from other jurisdictions.[9]

Additionally, I note that the trial court did not make any oral or written findings of fact or conclusions of law regarding Depp's desire to proceed without counsel or to have standby counsel, except to note that Depp had been granted the opportunity to represent himself. A trial court is required to make findings on the record as to whether the defendant's waiver of the right to counsel was made knowingly, intelligently, and voluntarily.[10]

Of course, we should not require trial courts to recite any specific litany while conducting *Faretta*-type hearings. But I believe a trial court is required to provide an adequate, meaningful, and accurate explanation of the basic constitutional rights that a defendant seeks to waive in order to ensure that the defendant makes a decision "with eyes open." [11] That fundamental requirement was not met in this case.

Finally, I would conclude that the United States Supreme Court's decision in *Iowa v. Tovar*,[12] which the Commonwealth

8. *Hill*, 125 S.W.3d at 226.

9. *See CJS Criminal Law* § 377 (2008) ("The court should generally hold a discussion with the accused. In accordance with the rules concerning what the accused must know in order to make a valid waiver, the court generally should expressly advise the accused of the disadvantages or dangers of self-representation, the fact that the accused must follow technical rules and rules of criminal procedure and evidence, the nature of the charges and possible penalties, defenses or mitigating factors, the right to counsel, and the right to self-representation.

> The court should advise the accused of the technical problems the accused may encounter in acting as his or her own counsel and risks he or she takes if the defense is unsuccessful, that the lack of knowledge of the law may impair the accused's ability to defend himself or herself, and that his or her dual role as attorney and accused might hamper effectiveness of his or her defense, and of the difficulties in acting as his or her own counsel. The defendant should be advised that, in addition to defenses, the defendant has rights that, if not timely asserted, may be lost permanently, and that if errors occur and are not timely objected to, objection to these errors may be lost permanently. When a defendant seeks to represent himself, the district court should in-

quire of the defendant about the complexity of the case to ensure that the defendant understands his or her decision and, in particular, the difficulties he or she will face proceeding in proper person. Accordingly, if a defendant willingly waives counsel and chooses self-representation with an understanding of its dangers, including the difficulties presented by a complex case, he or she has the right to do so. In addition, before allowing the criminal defendant to waive right to counsel, the court should specifically advise the defendant that it would be unwise not to accept assistance of counsel.") (footnotes omitted). *See also United States v. McDowell*, 814 F.2d 245, 251–52 (6th Cir.1987) (setting forth in an appendix a guideline for federal trial judges to follow in situations where a defendant expresses a desire for self-representation).

10. *Hill*, 125 S.W.3d at 226 (holding that the trial court "must make a finding on the record that the waiver is knowing, intelligent, and voluntary.").

11. *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525 (*quoting Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).

12. 541 U.S. 77, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004).

argues has superseded *Hill*, is clearly distinguishable from the case at hand because *Tovar* did not involve a request to proceed with self-representation at trial. Rather, as the Supreme Court itself held, *Tovar* involved "the extent to which a trial judge, before accepting a guilty plea from an uncounseled defendant, must elaborate on the right to representation."[13] Unsurprisingly, the Supreme Court held that no magic words were required for a defendant validly to waive the right to counsel.[14] With that unremarkable proposition, I do not quarrel. But I find *Hill* to be a more appropriate statement of Kentucky's more expansive law regarding a defendant's right to self-representation because we have previously noted that a defendant possesses somewhat more expansive rights in the self-representation area under Section 11 of the Kentucky Constitution than under the Sixth Amendment to the United States Constitution.[15] And *Tovar* itself recognized that a state was free to adopt a different approach.[16] So I disagree with the Commonwealth's assertion that *Hill* is no longer valid and binding.

There is more that causes me concern about the substance of this hearing. In the hearing, the trial court did not inform Depp of the nature of the charges against him and the range of punishments. I am not looking for magic words, incantations, or a scripted monologue by the trial court. I am simply looking for an adequate, meaningful, and accurate explanation of the basic constitutional right that Depp was relinquishing to ensure that he made his decision "with eyes open" as required

by *Faretta*. In my opinion, that did not happen here. Having reviewed the record, I would conclude that the trial court did not provide sufficient guidance and warnings to Depp so as to allow Depp to waive his vital constitutional right to an attorney with fully open eyes. Our precedent clearly holds that these types of errors are structural and cannot be harmless.[17] So I would reverse and remand for a new trial.

SCHRODER, J., joins this dissenting opinion.

antees a criminal defendant the right: (1) to represent himself pro se; (2) to be represented by counsel; or (3) to have hybrid representation.") (footnote omitted).

---

13. *Id.* at 81, 124 S.Ct. 1379.

14. *Id.* at 88, 124 S.Ct. 1379.

15. *See, e.g., Deno v. Commonwealth,* 177 S.W.3d 753, 757 (Ky.2005) ("The wording of Section 11 of the Kentucky Constitution, unlike that of the similar provision which appears in the United States Constitution, guar-

