RENDERED:  JANUARY 9, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1563-MR

JOHN SOMMERFIELD                      APPELLANT

APPEAL FROM MCCRACKEN CIRCUIT COURT
v.          HONORABLE WILLIAM ANTHONY KITCHEN, JUDGE
ACTION NO. 23-CR-00078

COMMONWEALTH OF KENTUCKY             APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, KAREM, AND TAYLOR, JUDGES.

KAREM, JUDGE:  A McCracken County jury convicted John Sommerfield

("Sommerfield") of 1st Degree Manslaughter and the McCracken Circuit Court

sentenced him to fifteen years' imprisonment.  Sommerfield appeals his

conviction, primarily arguing that the circuit court palpably erred in denying his

motion for a directed verdict on self-defense grounds.  Sommerfield also argues

that he was entitled to self-protection immunity under Kentucky Revised Statute

("KRS") 503.085 and that the prosecution had inappropriate contact with a witness during the trial. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Sommerfield was a certified professional engineer and project manager for Huffman Construction ("Huffman") and lived in Little Rock, Arkansas. It is undisputed that, on Christmas Day 2022, Sommerfield shot and killed his coworker, Bobby Tabor ("Tabor"). At that time, he was working on a project to retrofit the water pumps used to direct floodwater back into the river system from the levees in the Paducah area. While he was in town for work, Sommerfield would either stay in a hotel room provided by Huffman or sleep in Huffman's corporate building. The corporate building had a conference room, office, makeshift bedroom, bathroom, and other office rooms for employees.

On Christmas Day, Sommerfield invited Tabor, a craftsman and laborer for Huffman, to the corporate building where he was staying to "have some drinks" and see his music equipment and instruments. Tabor agreed and brought his sixteen-year-old twin sons, A.S. and M.S.[1] When they arrived, Sommerfield gave whiskey to Tabor and the boys, and everyone started drinking. Sometime later, A.S. went to the bathroom, vomited, and passed out. M.S. likewise felt dizzy and went to another room to lie down.

---

[1] Because Tabor's sons were juveniles at the time, we will use initials to identify them.

At some point while the boys were asleep, Sommerfield and Tabor had a physical altercation. Investigators found blood, clumps of hair, and bloody handprints on a wall in the hallway consistent with a physical dispute. Sommerfield sustained significant facial injuries, and Tabor had bruising on the left side of his face, eye, and lips.

After the altercation, Tabor went outside and started his car. When Tabor reentered the building, Sommerfield indicated in his statements to police that Tabor, with a blunt object in his hand, approached him in an aggressive manner. Sommerfield stated he instructed Tabor to stop but Tabor continued to approach him. Sommerfield ultimately shot Tabor in the chest.

A.S. and M.S. woke up and realized that their father had been shot. Sommerfield still had the gun in his hand and stated something along the lines of, "I don't care. He tried to rob me. You can call the cops." Tabor was grunting, but "he couldn't really speak." M.S. called the police.

When the police arrived, Sommerfield was sitting at a table and identified himself as the shooter. Both A.S. and M.S. later told police they had not witnessed any arguments or fighting and that before they had gone to lie down, everyone was in a good mood, laughing and getting along. Additionally, A.S. and M.S. both told the police that they did not hear a fight or a gunshot. Tabor was

treated at the scene and then taken by ambulance to Mercy Hospital in Paducah, where he was later pronounced deceased.

Sommerfield was indicted for murder in February 2023. Thereafter, in July 2024, Sommerfield filed a motion claiming immunity for "permitted use of force" under KRS 503.085. The circuit court denied the motion for immunity in an order entered on October 14, 2024.

The McCracken Circuit Court held a three-day trial in October 2024. The circuit court instructed the jury on Murder, First-Degree Manslaughter, Second-Degree Manslaughter, and Reckless Homicide. The jury instructions also included an instruction on Self-Protection. The jury found Sommerfield guilty of first-degree manslaughter and recommended a penalty of fifteen years' imprisonment. The circuit court entered a final judgment and sentence in accordance with the jury's verdict on December 3, 2024. This appeal followed.

We will discuss further facts as they become relevant.

**ANALYSIS**

Sommerfield first argues that the trial court erred when it denied his motion for permitted-use-of-force immunity under KRS 503.085. However, as we will discuss in greater detail in our analysis regarding Sommerfield's other two claims of error on appeal, review of this claimed error would be "purely academic . . . because [Sommerfield] has been tried and convicted by a properly instructed

jury in a trial with no reversible error." *Rodgers v. Commonwealth*, 285 S.W.3d 740, 756 (Ky. 2009). Indeed, Sommerfield's "self-defense claim has been thoroughly examined by both the trial judge under the directed verdict standard and the jury under the court's instructions and his entitlement to self-defense has been rejected." *Id.*; *see also Ragland v. Commonwealth*, 476 S.W.3d 236, 246 (Ky. 2015).

Sommerfield next argues that the circuit court palpably erred when it denied his motion for a directed verdict because "the burden was on the Commonwealth to prove that [Sommerfield] was not acting in self-defense and that his use of deadly force was unreasonable." At the conclusion of the Commonwealth's case, Sommerfield's counsel moved for a directed verdict, which the circuit court denied. However, after calling defense witnesses and resting its case, Sommerfield's counsel did not renew his motion for a directed verdict.[2] Accordingly, Sommerfield asks that we review this issue under Kentucky Rule of Criminal Procedure ("RCr") 10.26's palpable error standard.

---

[2] *See Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 836 (Ky. 2003) ("It is black-letter law that, in order to preserve an insufficiency-of-the-evidence allegation for appellate review, '[a] defendant must renew his motion for a directed verdict, thus allowing the trial court the opportunity to pass on the issue in light of all the evidence[.]' In other words, a motion for directed verdict made after the close of the Commonwealth's case-in-chief, but not renewed at the close of all evidence—i.e., after the defense presents its evidence (if it does so) or after the Commonwealth's rebuttal evidence—is insufficient to preserve an error based upon insufficiency of the evidence.") (footnoted citations omitted).

As discussed by the Kentucky Supreme Court, "[a] palpable error is one that affects the substantial rights of a party and will result in manifest injustice if not considered by the court." *Depp v. Commonwealth*, 278 S.W.3d 615, 620 (Ky. 2009), *as modified* (Mar. 10, 2009) (internal quotation marks and citations omitted). Indeed, "the key emphasis in defining such a palpable error under RCr 10.26 is the concept of 'manifest injustice.'" *Id.* (citing *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006)). "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin*, 207 S.W.3d at 3.

With that standard in mind, we turn to KRS 503.050, which governs the use of physical force in self-protection. The statute states in applicable part:

> (1) The use of physical force by a defendant upon another person is justifiable when the defendant believes that such force is necessary to protect himself against the use or imminent use of unlawful physical force by the other person.

> (2) The use of deadly physical force by a defendant upon another person is justifiable under subsection (1) only when the defendant believes that such force is necessary to protect himself against death, serious physical injury, kidnapping, sexual intercourse compelled by force or threat, felony involving the use of force, or under those circumstances permitted pursuant to KRS 503.055.

Here, Sommerfield argues that the Commonwealth presented insufficient proof that he was not privileged to act in self-protection. However, the

Kentucky Supreme Court "has previously explained, '[r]arely is a defendant relying upon self-defense entitled to a directed verdict. Only in the unusual case in which the evidence **conclusively** establishes justification and all of the elements of self-defense are present is it proper to direct a verdict of not guilty.'" *Leavell v. Commonwealth*, 671 S.W.3d 171, 179-80 (Ky. 2023) (quoting *West v. Commonwealth*, 780 S.W.2d 600, 601 (Ky. 1989)) (emphasis added).

The Court also "previously 'held that a defendant's statement that he acted in self-defense or his description of events which show such to be the case need not be accepted at face value where the jury may infer from his incredibility or the improbability of the circumstances that one or more of the elements necessary to qualify for self-defense is missing.'" *Id.* at 180 (quoting *West*, 780 S.W.2d at 601). In other words, "if the evidence relied upon to establish self-defense is contradicted or if there is other evidence from which the jury could reasonably conclude that some element of self-defense is absent, a directed verdict should not be given." *West*, 780 S.W.2d at 601. Indeed, "[w]hile the Commonwealth always bears the burden of proving every element of the crime charged, a defendant relying upon self-defense bears the risk that the jury will not be persuaded of his version of the facts." *Id.* (citation omitted). Such is the case even when "much of the evidence presented . . . [i]s circumstantial." *Id.* (citations omitted).

-7-

In the case *sub judice*, although the evidence certainly supported the self-protection instruction given to the jury, it did not "conclusively establish[]" self-defense. *Leavell*, 671 S.W.3d at 179-80 (quoting *West*, 780 S.W.2d at 601).

Police found the bullet casing in the conference room and signs of an altercation in the hallway and not in Sommerfield's office, as he had told the police. Moreover, police found no blunt object like a metal pipe on Tabor, no signs of a robbery, no signs of forced entry, and a trajectory consistent with a taller individual shooting a shorter one. Thus, the jury could reasonably infer that Sommerfield shot Tabor in the conference room when Tabor was unarmed and had returned from outside the building to retrieve his sons to leave the premises. Given the conflicting evidence presented to the jury in this case, the circuit court did not err in denying Sommerfield's motion for a directed verdict on the charge of murder. We can find no palpable error and therefore affirm.

Sommerfield's final argument is that he is entitled to a new trial due to improper communications between Detective Breakfield—the primary investigator in the case—and the prosecutor during a pause in Detective Breakfield's testimony. Detective Breakfield was standing in the center of the room, opening evidence bags while the defense attorney and the prosecutor watched. While the defense attorney marked exhibits, the prosecutor whispered to the detective. Although the exchange was not audible on the courtroom video, the

prosecutor later explained that it had asked Detective Breakfield's opinion on opening an evidence bag holding Tabor's work jacket. The detective responded that it was up to the Commonwealth but added that the blood-stained jacket may have "an odor to it."

Sommerfield did not object during trial when the prosecutor spoke to Detective Breakfield. While Sommerfield discussed the issue in a motion for a new trial, "raising . . . [an] issue for the first time in a motion for . . . a new trial does not preserve it for appellate review." *Byrd v. Commonwealth*, 825 S.W.2d 272, 274 (Ky. 1992), *overruled on other grounds by Shadowen v. Commonwealth*, 82 S.W.3d 896 (Ky. 2002). Therefore, we will review this claimed error under the "palpable error" standard previously discussed.

Under the palpable error standard, another element of "manifest injustice" is that in order to reverse on such grounds, "a substantial possibility [must] exist[] that the result of the trial would have been different." *Brock v. Commonwealth*, 947 S.W.2d 24, 28 (Ky. 1997) (citation omitted). Specifically, "[o]ur harmless error standard requires 'that if upon a consideration of the whole case this court does not believe there is a substantial possibility that the result would have been any different, the irregularity will be held nonprejudicial.'" *Matthews v. Commonwealth*, 163 S.W.3d 11, 27 (Ky. 2005) (quoting *Abernathy v.*

*Commonwealth*, 439 S.W.2d 949, 952 (Ky. 1969), *overruled on other grounds by Blake v. Commonwealth*, 646 S.W.2d 718 (Ky. 1983)).

In this case, Detective Breakfield's affidavit stated that the discussion was limited to the potential to introduce Tabor's blood-stained jacket and to open the same during cross-examination. Detective Breakfield left the decision up to the prosecutor. The prosecution decided not to introduce the jacket based on the impact that a blood-soaked jacket, packed in a bag for almost two years, might have on a juror. No discussion occurred with Detective Breakfield about any of the direct examination topics pursued by the defense. Moreover, the prosecution's cross-examination of Detective Breakfield had no correlation with the brief discussion seen on the video. As such, the defense suffered no prejudice because of any error by the prosecution, and the outcome of the case would have been no different. We can discern no palpable error and therefore affirm.

## CONCLUSION

For the foregoing reasons, we affirm the McCracken Circuit Court's final judgment and sentence of imprisonment.

ALL CONCUR.

BRIEFS FOR APPELLANT:

C. Tyler Brown
Paducah, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Sarah Benedict
Assistant Solicitor General
Frankfort, Kentucky